O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERINE MEDAWAR, et al.,<br><br>                Plaintiffs,<br><br>     v.<br><br>OTIS ELEVATOR COMPANY, et al.,<br><br>                Defendants. | Case No.: 2:20-cv-05155-MEMF(Ex)<br><br>**ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT [ECF NO. 66] AND GRANTING REQUEST FOR JUDICIAL NOTICE [ECF NO. 67]** |

     Before the Court is Defendant Otis Elevator Company's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment. ECF No. 66. The Court held oral argument on this matter on June 30, 2022. For the reasons stated herein, the Court hereby GRANTS IN PART the Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment.

/ / /

/ / /

# BACKGROUND

## I. Factual Background

In November 2018, Defendant Otis Elevator Company ("Otis Elevator") entered into a written agreement with JCM Builders, Inc. ("JCM") to furnish and install an elevator at a property owned by Cherine and Jill Medawar (collectively, "the Medawars"). Otis Elevator SUF ¶ 1. Although the elevator was conveyed to the Medawars in October 2019 and installed in January 2020, the dispute concerns whether Otis Elevator delayed its performance under the agreement and failed to furnish a fully functional Subject Elevator that passed a final State inspection and earned a certificate of occupancy within a reasonable time, thereby breaching the agreement.

## II. Procedural History

On May 8, 2020, the Medawars filed a complaint against Otis Elevator in the Superior Court of Los Angeles County. ECF No. 1-2. On June 10, 2020, this case was removed to federal court. ECF No. 1. On June 26, 2020, the Medawars filed a First Amended Complaint. ECF No. 17. On March 2, 2021, the Medawars filed a Second Amended Complaint, alleging four causes of action: (1) breach of contract; (2) intentional breach of contract; (3) fraud; and (4) negligence. *See generally* SAC. On August 13, 2021, the Court granted Otis Elevator's Motion to Dismiss the Medawars' negligence, fraud, and intentional breach claims. ECF No. 52. On April 29, 2022, Otis Elevator filed the instant Motion for Summary Judgment and Request for Judicial Notice. ECF Nos. 66 ("Motion" or "Mot." or "MSJ"), 67 ("RJN"). Otis Elevator seeks a full order granting summary judgment on the grounds that no genuine dispute exists as to any material fact with respect to the Medawars' causes of action herein, entitling Otis Elevator to judgment as a matter of law. Mot. at 1. Otis Elevator also moves, in the alternative, for partial summary judgment as to the Medawars' prayer for consequential, indirect, and special damages. *Id.* at 2. The Motion for Summary Judgment was fully briefed on June 9, 2022. ECF Nos. 71 ("Opp'n"), 78 ("Reply"). A hearing on the Motion was held on June 30, 2022.[1]

---

[1] The Medawars contend that the Motion was not timely noticed for hearing. Under the Court's Civil Trial Order, the last day to hear motions, including motions for summary judgment, was June 9, 2022. ECF No. 70.

**REQUEST FOR JUDICIAL NOTICE**

I. **Applicable Law**

A court may take judicial notice of facts not subject to reasonable dispute where the facts "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Under this standard, courts may take judicial notice of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

II. **Otis Elevator's Request for Judicial Notice**

Otis Elevator submits—and asks the Court to take judicial notice of—one (1) exhibit in support of its Motion for Summary Judgment:

1. *Contractor's License Detail for License #1043732*, Contractors State License Bd. (last visited Apr. 5, 2022), https://www.cslb.ca.gov/onlineservices/checklicenseII/checklicense.aspx.

Although a district court generally may not consider any material beyond the pleadings in ruling on a motion to dismiss, the court may take judicial notice of matters in the public record. *Id.* at 689–90. The Ninth Circuit has recognized public records, including the records of state agencies, as proper subjects of judicial notice. *See, e.g.*, *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (holding that a court "may take judicial notice of the records of state agencies and other undisputed matters of public record").

---

On April 6, 2022, per the Court's Civil Standing Order, Otis Elevator contacted the Court to confirm whether the Court was able to hear the Motion on June 2, 2022. Given the Court's calendar, the Court informed Otis Elevator that June 30, 2022, was the earliest available date—as a result, the earliest available date was beyond the deadline set by the Court's Civil Trial Order. Given the circumstances, the Court will exercise its discretion to accept the filing. However, the parties are advised to ensure that all proposed dates comply with the Civil Trial Order in the future. To the extent that an extension is required, the parties must submit a formal request or stipulation to amend the Civil Trial Order on which the Court will rule before setting new dates.

Here, the exhibit submitted by Otis Elevator—the contractor's license for JCM builders—falls into the category of public records that courts have deemed proper for judicial notice. The Court therefore GRANTS Otis Elevator's unopposed Request to take judicial notice of Exhibit 1.

## MOTION FOR SUMMARY JUDGMENT

### I. Applicable Law

#### A. Motion for Summary Judgment

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

Under Rule 56(a), a court also has authority to grant *partial* summary judgment, or "judgment on less than the entire case." 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2737 (4th ed. 2022) (citing FED. R. CIV. P. 56(a)). Under Rule 56(g), a court that "does not grant all the relief requested by the motion . . . may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case." FED. R. CIV. P. 56(g).

A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the non-moving party bears the burden of proving a claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

If the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *See id.* "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed." FED. R. CIV. P. 56(e)(2). The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. *Id.* 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

### B. Breach of Contract

Under California law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach; and (4) damages to the plaintiff caused by the breach. *Hamilton v. Greenwich Investors XXVI, LLC*, 126 Cal. Rptr. 3d 174, 183 (Ct. App. 2011) (quoting *Reichert v. General Ins. Co.*, 442 P.2d 377, 381 (Cal. 1968)). Moreover, "[s]omeone who is not a party to the contract has no standing to enforce the contract." *Hatchwell v. Blue Shield of Cal.*, 244 Cal. Rptr. 249, 253 (Ct. App. 1988).

## II. Discussion

### A. Findings of Fact[2]

The Court finds that the following material facts are established for trial under FED. R. CIV. P. 56(a) and FED. R. CIV. P. 56(g).

---

[2] The facts set forth below are taken from the parties' prepared Statements of Undisputed and Additional Facts. ECF Nos. 66-1 ("Otis Elevator SUF"); 72, at 1 ("Medawar SUF Opp'n"); 72, at 25 ("Medawar SAF"). To the extent that any statements of fact are omitted, the Court concludes they are not material to the disposition of this Motion.

On November 12, 2018, Defendant Otis Elevator entered into a written agreement listing JCM as the "Customer." Otis Elevator SUF ¶ 1; ECF No. 66-3 ("Bruhl Decl."), Ex. 1, at 1. The Contract was in the sum of $71,500 to furnish and install one Otis 3510 HydroFit Front Opening Holess Hydraulic Elevator at 25024 Narbonne Ave., Lomita, California 90717. Otis Elevator SUF ¶ 1. JCM is a General Building Contractor licensed by the State of California.[3] *Id.* ¶ 2. The Plaintiffs in this case are Cherine and Jill Medawar, who hold title (in their individual capacities) to the Subject Property where the Subject Elevator would be installed. Medawar SAF ¶ 100. Together, they also wholly own, and are the sole shareholders, officers, and directors of JCM. *Id.* The Contract was signed by Medawar as the "Authorized Representative" of the "Customer," who identified in handwriting that he was "CFO" (*i.e.*, Chief Financial Officer) of JCM. *Id.* ¶ 105. Immediately below this, Medawar also signed as the "Principal, Owner or Authorized Representative of Principal or Owner," without mentioning JCM. *Id.*

Prior to the commencement of the instant litigation, JCM paid the invoices issued by Otis Elevator in connection with Otis Elevator's work under the Contract. Otis Elevator SUF ¶ 3. In December 2018, Otis sent its first invoice for $32,175, along with lien release documentation. Medawar SAF ¶ 107. These were addressed only to Medawar and did not mention JCM. *Id.* Medawar signed the JCM check used to promptly pay the invoice. *Id.* In September 2019, Otis sent its next invoice under the contract for $22,522.50, along with lien release documentation. *Id.* ¶ 108. These were also addressed only to Medawar and did not mention JCM. *Id.* The $22,522.50 was promptly paid by JCM check signed by Medawar. *Id.* Subsequently, on April 20, 2020, Otis Elevator issued an additional charge of $2,300 in connection with certain work performed by Otis Elevator under the Contract on overtime basis, discussed in detail below. Otis Elevator SUF ¶ 4. The additional charge raised the total Contract price to $73,800. *Id.* ¶ 5.

The Contract provides in relevant part: "It is agreed that we do not intend to create a right in any third party by entering into this contract." *Id.* ¶ 6. The Contract further provides that certain

---

[3] In its Request for Judicial Notice, Otis Elevator submitted a copy of JCM's contractor's license, obtained from the California Department of Consumer Affairs – Contractors State License Board's website. *See* RJN, Ex. 1.

6

mandatory construction and electrical work must be performed by others before Otis Elevator can install, adjust, and schedule the final California State Inspection of the Subject Elevator pursuant to the relevant Elevator Code. *Id.* ¶ 7. The term "adjustment" refers to Otis Elevator's post-installation examination of the Subject Elevator designed to ensure that the Subject Elevator is ready for the final State Inspection. *Id.* ¶ 8.

Specifically, the Contract states that entities and/or individuals other than Otis Elevator must: 1) provide electrical power "of permanent characteristic" necessary to perform adjustment of the Subject Elevator; 2) provide Code-compliant elevator hoistway and pit, including but not limited to waterproof pit and pit ladder; 3) provide Code-compliant properly lighted and ventilated fireproof elevator machine room; 4) furnish and install circuit breakers, among others, "necessary to meet requirements of the governing code or authority"; 5) supply a light switch in the elevator machine room; and 6) provide telephone service with a dedicated line, run in conduit, to the elevator control panel in the elevator machine room. *Id.* ¶ 9. Many of the previously referenced Contract terms also appear in the documents entitled "Confirmation of Power for Elevator Systems" ("Confirmation of Power") and "Contractor's Pre-Inspection Checklist," ("Pre-Inspection Checklist"), which Medawar received from Otis Elevator on March 5, 2019. *Id.* ¶ 11. Without this work completed, the Subject Elevator would not pass the final State Inspection, and it would be unavailable for any passenger use whatsoever. *Id.* ¶ 13.

The Contract does not specify the manufacturing, delivery, or installation completion deadline for the Subject Elevator. *Id.* ¶ 15. Even though the project lasted well beyond June 30, 2019, Otis Elevator never charged Plaintiffs and/or JCM for additional labor or materials costs associated with the lengthy duration of the project. *Id.* ¶ 18.[4] Nor does Contract contain a "Time Is of

---

[4] Otis Elevator's SUF proposed the following fact: "Even though the project lasted well beyond June 30, 2019, through no fault of Otis Elevator, Otis Elevator never charged Plaintiffs and/or JCM for additional labor or materials costs." Otis Elevator SUF ¶ 18. Although the Medawars contend that this fact is disputed, the Court finds that the Medawars failed to establish that this constitutes a genuine dispute, as they merely argue that "Otis failed to perform within a reasonable time," without citing to evidence showing that Otis Elevator

7

the Essence" clause. *Id.* ¶ 19. The Contract provides in relevant part:

> LOSS, DAMAGES OR DELAY
>
> Under no circumstances shall either of us be liable for any loss, damage or delay due to any cause beyond your or our reasonable control . . . . Under no circumstances shall either of us be liable for special, indirect or consequential damages of any kind including, but not limited to, loss of profits, loss of good will, loss of business opportunity, additional financing costs or loss of use of any equipment or property, whether in contract, tort, warranty, or otherwise, notwithstanding any indemnity provisions to the contrary.

*Id.* ¶ 20.

On March 5, 2019, Otis Elevator provided Medawar with the Final Approval Package, which contained various specifications for the Subject Elevator Plaintiffs were required to approve before Otis Elevator could commence manufacturing the elevator equipment. *Id.* ¶ 21. On May 29, 2019, Otis Elevator promptly ordered the elevator materials for manufacturing. *Id.* ¶ 23. The elevator equipment arrived at the Subject Property in October 2019. *Id.* ¶ 24. However, Otis Elevator was prevented from commencing the installation of the Subject Elevator at that time because certain preinstallation work related to the Subject Elevator's pit, hoistway, and machine room had not yet been completed by others. *Id.* ¶ 25. If a customer is not ready and the installation date is missed, Otis Elevator would generally schedule manpower on first-come, first-served basis. *Id.* ¶ 27. On January 8, 2020, Otis Elevator installed the Subject Elevator at the Subject Property. *Id.* ¶ 29. However, it did not adjust the Subject Elevator on that date due to the lack of permanent power. *Id.* ¶ 30.[5] On that same date, Otis Elevator provided Medawar with a document entitled "Job Site Field Memo Survey," ("Survey") which details "items of work by others" that "should be completed so as not to delay our [Otis Elevator's] installation schedule or state inspection." *Id.* ¶ 31. The Survey states:

---

charged them for additional labor or materials costs associated with the duration of the project. *See* Medawar SUF Opp'n ¶ 18. However, the Court finds the phrase "through no fault of Otis Elevator" to be argumentative and subject to dispute; as a result, the phrase has been omitted from the Court's findings of fact.

[5] Otis Elevator's SUF proposed the following fact: "However, it could not adjust the Subject Elevator on that date due to the continued lack of permanent electrical power." Otis Elevator SUF ¶ 30. The Medawars dispute this fact, arguing that Otis could in fact have adjusted the Subject Elevator using a temporary generator. Medawar SUF Opp'n ¶¶ 9, 30. The Medawars further note that Kim Boyle, an Otis Elevator employee, admitted during her deposition that "Otis had often used temporary generators before and that was an option in this case." *Id.* ¶ 9. For clarity's sake, the Court adjusts the proposed language and finds that Otis Elevator "*did* not adjust the Subject Elevator on that date due to the continued lack of permanent electrical power."

"PLEASE CALL WHEN ALL ITEMS ARE COMPLETED SO AS NOT TO DELAY OUR INSTALLTION SCHEDULE." *Id.* ¶ 33. On January 8, 2020, Otis Elevator provided another checklist of items that the Medawars were required to complete to obtain final inspection approval. Medawar SAF ¶ 109. The checklist was addressed to Medawar and did not mention JCM. *Id.*

On February 7, 2020, Medawar notified Otis Elevator that he was in the process of securing permanent electrical power and requested that Otis Elevator schedule an adjustment of the Subject Elevator and a state inspection.[6] *Id.* ¶ 35; Golodnitska Decl., Ex. 3, at 1; *see also* Medawar SUF Opp'n ¶ 35. The Contract requires additional charge for any overtime work, such as work performed on weekends.[7] Otis Elevator SUF ¶ 36. On February 14, 2020, Medawar signed a change order prepared by Otis, agreeing to pay overtime in order to speed up the scheduling of final inspection for the elevator. Medawar SAF ¶ 115. The change order was addressed to Medawar, without mentioning JCM, and was signed by Medawar as the "Owner." *Id.*

On Saturday, February 22, 2020, Otis Elevator adjuster Eric Wilber performed the adjustment of the Subject Elevator. Otis Elevator SUF ¶ 39. During the February 22, 2020 visit, Wilber noted that a properly functioning telephone line in the Subject Elevator's machine room remained outstanding. *Id.* ¶ 40. As such, Otis Elevator did not schedule the final State Inspection at that time. *Id.* ¶ 41.[8]

---

[6] Otis Elevator's SUF proposed the following fact: "On February 7, 2020, Mr. Medawar notified Otis Elevator that he was in the process of securing permanent electrical power and that, therefore the Subject Elevator was now ready for adjustment." Otis Elevator SUF ¶ 35. The Medawars object to this fact, arguing that Otis Elevator General Manager Carrie Bruhl, whose declaration is cited in support of this fact, lacks foundation and personal knowledge to testify to this information. Medawar SUF Opp'n ¶ 35. The Court overrules this objection. As General Manager at Otis Elevator, Bruhl would reasonably be aware of the company's communications with clients, even with respect to communications not sent directly to her. Moreover, Medawar's email, which was submitted as evidence, shows that no genuine dispute exists here. *See* ECF No. 66-2 ("Golodnitska Decl."), Ex. 3, at 1.

[7] The Medawars dispute this fact, arguing that the Contract does not *require* that a Customer pay overtime, but that the Customer may agree to pay overtime. The Court finds that this is not a genuinely disputed fact. In fact, it appears that the Medawars are merely repeating Otis Elevator's statement of uncontroverted fact—that under the Contract, a customer who chooses to request overtime work, such as work performed on weekends, is required to pay an additional charge.

[8] Otis Elevator's SUF proposed the following fact: "As such, Otis Elevator was unable to schedule the final State Inspection at that time." Otis Elevator SUF ¶ 41. The Medawars dispute this fact, arguing that Otis technically "could have scheduled the State Inspection in anticipation of the completion and testing of the

On April 20, 2020, Otis Elevator issued a charge of $2,070, the amount of the $2,300 overtime charge completed in February 2020, less ten percent retainage. Otis Elevator SUF ¶ 38; Medawar SAF ¶ 118. The invoice was addressed solely to Medawar without mention of JCM but was not paid until Otis completed the work. *Id.* On May 1, 2020, Otis Elevator signed a lien release documentation for the payment of the $2,070. *Id.* ¶ 119. The lien release documentation identified Medawar as the "customer" without mentioning JCM. *Id.* On May 1, 2020, Otis Elevator prepared a statement again addressed to Medawar without mentioning JCM. *Id.* ¶ 120.

On January 14, 2021, Wilber again examined the Subject Elevator in order to determine whether the conditions at the Subject Property were acceptable for the final State Inspection. *Id.* ¶ 42. He confirmed that all work on behalf of Otis Elevator in connection with the Subject Elevator was indeed complete. *Id.* ¶ 43. Although there was still no functioning telephone line to the Subject Elevator's machine room when Wilber arrived, Plaintiffs were eventually able to work with their service provider that afternoon to establish a working signal into the machine room, and thus the elevator, during Wilber's second visit to the Subject Property. *Id.* ¶ 44.

During this same visit, Wilber also determined that the Subject Elevator's machine room lacked sufficient ventilation, which could potentially impact the Subject Elevator passing the final State Inspection. *Id.* ¶ 45. Accordingly, Wilber suggested that Plaintiffs install a louver in the Subject Elevator's machine room's door to improve ventilation and consequently, increase the likelihood of the Subject Elevator passing the final State Inspection. *Id.* ¶ 46.

The Medawars having cured the critical issue in connection with the telephone line, and consistent with the express terms and conditions under the Contract, Otis Elevator requested a date

---

telephone line, without waiting for that completion and testing." Medawar SUF Opp'n ¶ 41. Here, the Medawars appear to object to semantics—specifically, to the use of the word "could." Although it is true that Otis technically *could* have scheduled a state inspection at any time, the primary issue was that the Subject Elevator likely would not have passed the final State Inspection without a properly functioning telephone line. However, for clarity's sake, the Court adjusts the proposed language and finds that "Otis Elevator *did* not schedule the final State Inspection at that time."

from the State of California for the final State Inspection.[9] Otis Elevator SUF ¶ 47. The final State Inspection occurred on January 29, 2021. *Id.* The Subject Elevator passed the final State Inspection and was conveyed to Plaintiffs. *Id.* ¶ 48. The Contract provides that all Contract-related charges, inclusive of change orders, must be billed up to 90% of the total Contract price and paid before title to the Subject Elevator can transfer to the elevator owner. *Id.* ¶ 49. The Contract provides that monthly progress payments shall be made to Otis Elevator thirty-five (35) days after each billing date. *Id.* ¶ 50. The April 20, 2020 charge of $2,300 for Eric Wilber's overtime adjustment work performed on February 22, 2020, was not paid until February 1, 2021. *Id.* ¶ 51.

### A. Whether the Medawars Have Standing to Bring a Breach of Contract Claim Depends on the Existence of an Agency Relationship, Which Is a Question of Fact Not to Be Decided on a Motion for Summary Judgment Under The Circumstances Presented In This Case.

Otis Elevator contends that the Medawars lack the standing necessary to allege a breach of contract claim against it because no contract exists between Otis Elevator and the *Medawars*. Mot. at 10–11. In particular, Otis Elevator notes that it only entered into the Contract with *JCM* to furnish and install the Subject Elevator at the Subject Property. *Id.* In response, the Medawars argue that they have the necessary standing to allege a breach of contract claim because the parties understood and intended that JCM act as an agent on behalf of the Medawars, that the Medawars were a disclosed principal on whose behalf JCM acted, and that even if the Medawars lacked standing against Otis Elevator, JCM could and should be substituted in as a plaintiff. Opp'n at 14–15.[10]

---

[9] The Medawars again contend that this fact is disputed because "Otis could have scheduled the State Inspection in anticipation of the completion and testing of the telephone line, without waiting for that completion and testing." Medawar SUF Opp'n ¶ 47. The Court finds no genuine dispute here. Unlike the previous facts offered by Otis Elevator, *see* Otis Elevator SUF ¶ 41, this fact does not suggest that Otis Elevator was unable to schedule an earlier inspection. Rather, this fact merely establishes that Otis Elevator only scheduled the final State Inspection after the Medawars fixed the issue concerning the telephone line.

[10] The Medawars note that Otis Elevator stated in the parties' Joint Case Management report that it believed that JCM should be substituted in as a plaintiff instead of the Medawars and that Otis Elevator would stipulate to the substitution. Opp'n at 12, 15 (citing ECF No. 64). As a result, the Medawars contend that the complaint should not be dismissed for lack of standing. However, the parties never actually stipulated to the substitution. Therefore, the Medawars' argument is unavailing.

A plaintiff seeking to demonstrate standing bears the burden of proof to establish standing "with the manner and degree of evidence required at the successive stages of litigation." *Washington Envt. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992) (noting that in responding to a motion for summary judgment, "the plaintiff can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true")).

As an initial matter, only the real party in interest has standing to sue under the substantive law. *Gantman v. United Pac. Ins. Co.*, 284 Cal. Rptr. 188, 191 (Ct. App. 1991). Under California law, someone who is not a party to a contract has no standing to enforce the contract. *Id.* These rules extend to third parties who are agents of a party to a contract. *Cohen v. TNP 2008 Participating Notes Program, LLC*, 243 Cal. Rptr. 3d 340, 356 (Ct. App. 2019). "[A]n agent for a party to a contract not made with or in the name of the agent is not a real party in interest with standing to sue on the contract." *Id.* (quoting *Powers v. Ashton*, 119 Cal. Rptr. 729, 733 (Ct. App. 1975)); *see also Epic Commc'ns, Inc. v. Richwave Tech., Inc.*, 101 Cal. Rptr. 3d 572, 589 (Ct. App. 2009) ("Nor does an agent ordinarily have a cause of action based upon some third person's violation of its principal's rights. Without some breach of a duty owed *to him*, it has no power to sue on the principal's claim.").

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01. "[O]stensible authority arises as a result of conduct of the principal which cause[s] the third party reasonably to believe that the agent possesses the authority to act on the principal's behalf." *Tomerlin v. Canadian Indem. Co.*, 394 P.2d 571, 574 (Cal. 1964). "An agent's authority may be implied from the circumstances of a particular case and may be proved by circumstantial evidence." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 479–80 (9th Cir. 2000) (citing *Kelley v. R.F. Jones Co.*, 77 Cal. Rptr. 170, 174 (Ct. App. 1969)). "However, unless only one conclusion may be drawn, existence of an agency and the extent of an agent's authority is a question of fact and should not be decided on summary judgment." *Id.* at 480.

In order to determine whether the Medawars have standing, the Court must identify—between the Medawars and JCM—who was the agent of whom. In order to make this determination, the Court may consider not only the contract between the parties itself, but also the conduct of the parties. *Crestview Cemetery Ass'n*, 356 P.2d 171, 752 (Cal. 1960) ("That the actions of the parties should be used as a reliable means of interpreting an ambiguous contract is, of course, well settled in our law."). Upon review of the course of dealing between the Medawars, JCM, and Otis Elevator, however, the Court ultimately finds that genuinely disputed facts exist as to this inquiry.

The Contract itself was a written agreement between Otis Elevator and JCM. Otis Elevator SUF ¶ 1. On the other hand, Medawar signed this initial contract as the "Authorized Representative" of the "Customer," indicating that he was the Chief Financial Officer of JCM. Medawar SAF ¶ 105. Otis Elevator also referred to JCM as the "Customer" in various documents, including the Confirmation of Power, Bruhl Decl., Ex. 3, and Critical Construction Information, *id.*, Ex. 5 at 4. However, Otis Elevator sent the Medawars charge orders and invoices addressed to Medawar or identifying him as the client, without mentioning JCM. *Id.* ¶¶ 107, 115–16. Moreover, the initial Contract identified JCM as the "Customer" and Medawar as an "Authorized Representative" of JCM. *Id.* ¶¶ 107, 115–16.

On balance after considering the parties' conduct in their entire course of dealing, the Court finds that there are genuine factual disputes as to the nature of the relationship between the Medawars and JCM. More precisely put, although the historical facts of what occurred between the parties are not in dispute, the facts themselves lead the Court to two different, but reasonable, inferences—on the one hand, that the Medawars acted as agents of JCM, and on the other, that JCM acted as an agent of the Medawars. "[S]ummary judgment should not be granted where contradictory inferences may be drawn from such facts, even if undisputed." *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985) (citing *United States v. Perry*, 431 F.2d 1020, 1022 (9th Cir. 1970)).

As a result, because more than one reasonable inference may be drawn from the facts in this case, the Court finds this issue appropriate for resolution by the jury. *See C.A.R. Transp.*, 213 F.3d at 480 ("[U]nless only one conclusion may be drawn, existence of an agency and the extent of an

agent's authority is a question of fact and should not be decided on summary judgment."). The Court therefore DENIES the Motion to Summary Judgment as to the issue of standing.

///

///

### B. Whether Otis Elevator Breached Its Contractual Obligations Is a Genuinely Disputed Fact.

Otis Elevator further contends that Otis Elevator did not breach any of its contractual obligations because: (1) there is no evidence that Otis Elevator failed to complete installation, adjustment, or a timely scheduling of the final state inspection of the subject elevator; (2) Otis Elevator's request for payment of overtime work was reasonable and justified; (3) there is no evidence that Otis Elevator failed to complete manufacture and delivery of the subject elevator to the subject property within a reasonable time in 2019; and (4) JCM breached the contract by failing to timely pay the $2,300 overtime charge for the February 2020 adjustment work. Mot. at 12–16. The Medawars note that any discussion of Otis Elevator's actions in 2019 is irrelevant, as "[t]he problem in this case is not what happened in 2019. It is the failure of Otis [Elevator] to schedule and complete the final State Inspection within a reasonable period of time after January of 2020 when Otis provided its January 8, 2020 checklist." Medawar SUF Opp'n ¶¶ 22–26, 28–29. Therefore, the Court need not consider Otis Elevator's argument that there is no evidence that it failed to complete manufacture and delivery of the Subject Elevator to the Subject Property within a reasonable time in 2019. Mot. at 15–16.

> i. Whether Otis Elevator Completed Installation, Adjustment, or a Scheduling of the Final State Inspection of the Subject Elevator Within a Reasonable Time Is a Genuinely Disputed Fact.

Otis Elevator contends that it fully performed its obligations under the Contract by furnishing and installing the Subject Elevator at the Subject Property despite being hindered by the Medawars' continued failure to comply with their contractual obligations by: (1) failing to install permanent electrical power necessary to perform adjustment of the Subject Elevator until February 2020; and (2) failing to furnish a properly functioning telephone line in the Subject Elevator's machine room

until January 14, 2021. Mot. at 12–14. Otis Elevator further notes that, once these issues had been resolved, it subsequently requested a date for the final State Inspection and thereafter informed the Medawars that the Subject Elevator passed the inspection. Mot. at 14. The Medawars allege that there exists a dispute as to whether Otis Elevator completed the installation, adjustment, and timely scheduling of the final State Inspection of the Subject Elevator *within a reasonable time*. Opp'n at 16. They concede that the Contract contained no performance deadline but assert that it included parameters suggesting a reasonable time by which performance should be completed. *Id.* "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed." CAL. CIV. CODE § 1657. Moreover, "[t]he question of what constitute[s] a reasonable time" within which to perform obligations under a contract is "one of fact." *Lyon v. Goss*, 123 P.2d 11, 19 (Cal. 1942).

Here, there exists a dispute as to whether Otis Elevator breached the Contract by failing to perform its obligations within a reasonable time. Otis Elevator concedes that the Contract does not specify the manufacturing, delivery, or installation completion deadline for the Subject Elevator. Otis Elevator SUF ¶ 15. As a result, under the California Civil Code, Otis Elevator's obligations were to be performed within a reasonable time. CAL. CIV. CODE § 1657. Because what constitutes a reasonable time is a question of fact that is genuinely in dispute, the Court finds that this inquiry is inappropriate for resolution on a Motion for Summary Judgment. The Court therefore DENIES the Motion for Summary Judgment as to breach of contract.[11]

### C. The Contract's "Loss, Damages or Delay" Provision Bars Relief for Consequential, Special, and Indirect Damages.

---

[11] Because the Court finds that a genuine dispute exists as to whether Otis Elevator fully complied with its obligations under the Contract within a reasonable time, and therefore that granting summary judgment is inappropriate as to the issue of breach of contract, the Court need not consider Otis Elevator's other allegations on this Motion for Summary Judgment, such as that Otis Elevator's request for payment of overtime work was reasonable and justified and that JCM breached the Contract by failing to timely pay the $2,300 overtime charge for the February 2020 adjustment work. Mot. at 14–18. Moreover, Otis Elevator only asks that the Court, if not inclined to grant full summary judgment, alternatively grant partial summary judgment as to the Medawars' prayer for consequential, indirect, and special damages. *Id.* at 2, 16–18.

Finally, Otis Elevator contends that any relief sought for consequential, special, and indirect damages are expressly barred by the Contract. Mot. at 16–18. The Contract provides in relevant part:

LOSS, DAMAGES OR DELAY

**Under no circumstances shall either of us be liable for any loss, damage or delay due to any cause beyond your or our reasonable control . . . . Under no circumstances shall either of us be liable for special, indirect or consequential damages of any kind including, but not limited to, loss of profits, loss of good will, loss of business opportunity, additional financing costs or loss of use of any equipment or property**, whether in contract, tort, warranty, or otherwise, notwithstanding any indemnity provisions to the contrary.

Bruhl Decl., Ex. 1 at 4 (emphasis added); Otis Elevator SUF ¶ 20 (emphasis added). The Medawars contend that Otis Elevator's reliance on this clause is misplaced because: (1) the clause in question seeks to limit damages only for delays "beyond [Otis Elevator's] reasonable control"; (2) the clause does not apply to general contract damages, which include the damages for lost profits sought by Otis Elevator; (3) the clause is an unconscionable attempt to avoid all liability; and (4) even if conscionable, the clause is inappropriate under the current circumstances. Opp'n at 16–21.

As an initial matter, contract interpretation begins with the plain language of the contract, *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1205 (9th Cir. 2011) ("The plain language of the contract should be considered first . . . ." (quoting *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009))), and here the Contract contains no language limiting special, indirect, or consequential damages only to delays beyond Otis Elevator's reasonable control.

Although the Contract specifically lists "loss of profits" among the damages neither party shall be liable for, Bruhl Decl., Ex. 1 at 4, the Medawars contend that they may still recover for lost rental profits under the contract because these claimed lost profits are *general* contract damages and therefore not covered by the second sentence of the "loss, damages or delay" clause quoted above, which only prohibits "*special, indirect, or consequential* damages." Under California law, "[l]ost profits, if recoverable, are more commonly special rather than general damages." *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 102 P.3d 257, 266 (Cal. 2004) (citations omitted). General damages are generally characterized as "those that flow directly and necessarily from a breach of contract, or that are a natural result of a breach." *Id.* at 261. As the California Supreme

Court has held, "[g]eneral damages for breach of a contract 'are based on the value of the performance itself, not on the value of some consequence the performance may produce.'" *Id.* at 263 (quoting 3 Dan B. Dobbs, *Law of Remedies*, § 12.4(1) (1993)).[12] This concept, also contained in the rule of *Hadley*, *see Hadley v. Baxendale*, 156 Eng. Rep. 145 (1854), is codified in the California Civil Code:

> For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, *in the ordinary course of things*, would be likely to result therefrom.

CAL. CIV. CODE § 3300 (emphasis added). As the Restatement (Second) of Contracts § 351 puts it:

> (1) Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made.
> (2) Loss may be foreseeable as a probable result of a breach because it follows from the breach
>     (a) in the ordinary course of events, or
>     (b) as a result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know.
> (3) A court may limit damages for foreseeable loss by excluding recovery for loss of profits, by allowing recovery only for loss incurred in reliance, or otherwise if it concludes that in the circumstances justice so requires in order to avoid disproportionate compensation.

Restatement (Second) of Contracts § 351 (1981).[13]

That is, either the losses flow from the breach in the ordinary course of events—in which they are general damages—or they are the result of special circumstances—in which they are special

---

[12] *See also Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 11 N.E.3d 676, 680 (N.Y. 2014) ("[W]here . . . damages reflect a 'loss of profits on collateral business arrangements,' they are [consequential damages]."); 11 Joseph M. Perillo, *Corbin on Contracts* § 56.6 (rev. ed. 2022) ("These two terms ["general" and "special" damages] may be convenient as shorthand words to differentiate between those cases in which there are no unusual circumstances and the sequence of breach and injury, as cause and effect, would be believed to be known to the ordinary person, and other cases in which there are unusual circumstances and there must be evidence that the defendant had reason to know them and to foresee the injury that has occurred.").

[13] Although the Restatement Second of Contracts (Restatement) is not binding authority, "considering the circumstances under which it has been drafted, and its purposes, in the absence of a contrary statute or decision in this state, it is entitled to great consideration as an argumentative authority." *Lake Alamanor Assocs. L.P. v. Huffman-Broadway Grp., Inc.*, 101 Cal. Rptr. 3d 71, 76 n.3 (Ct. App. 2009) (quoting *Canifled v. Security-First Nat'l Bank*, 87 P.2d 830, 844–45 (Cal. 1939)).

damages. This concept is helpfully described by a sister district court also in reliance on the Restatement:

> The common law distinction between special and general damages is instructive to interpreting the Limitation of Liability provision in the Contract. In breach of contract cases, the distinction between consequential or special damages and general or direct damages is defined by the level of foreseeability the parties had at the time the contract was made of the possible harm resulting from breach. General or direct damages are foreseeable damages because they occur in the ordinary course of events. In contrast, special or consequential damages are those that occur as a result of special circumstances, beyond the ordinary course of events, which the party in breach will be aware of at the time of contract formation only if notified of such circumstances.

*Assurance Co. of Am. v. Premium Constr. Grp., Inc.*, 2012 WL 1292420, at *2 (W.D. Wa. Apr. 16, 2012) (citations omitted).

Where California courts have permitted lost profits as general damages, it is because in those instances, "[t]he likelihood of lost profits from related or derivative transactions is so obvious . . . that the breaching party must be deemed to have contemplated them at the inception of the contract." *Lewis Jorge*, 102 P.3d at 264.

Here, although the Medawars contend that the parties contemplated that lost rental profits would result from a breach of contract, Opp'n at 18–20, the Medawars have failed to establish that lost rental profits would *ordinarily* result from any breach of an elevator construction contract as a matter of law. CAL. CIV. CODE § 3300 ("For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, *in the ordinary course of things*, would be likely to result therefrom." (emphasis added)). It does not appear to be the case that lost rental profits would result from a delay in construction of an elevator "in the ordinary course of things." *Id.*; *see also* Restatement (Second) of Contracts § 351(2)(a) (1981) ("Loss may be foreseeable as a probable result of a breach because it follows from the breach . . . in the ordinary course of events.").

They have also failed to point to any authority stating as much. It is therefore of no moment that, as claimed by the Medawars, it was allegedly "obvious" to these parties that this building was

to be used for rentals.[14] Opp'n at 13, 20. Any special circumstances specific to these parties—such as the allegedly contemplated rental use of the property—would only operate to justify special damages, had the parties not explicitly disclaimed them in the Contract. The fact that it may have been obvious to these parties that the Medawars wanted to rent out the property does not make these lost rental profits general damages. Having reviewed the analogous cases and the authority cited above, this Court finds that such lost rental profits do not constitute damages that would flow "in the ordinary course of things." CAL. CIV. CODE § 3300. As a matter of law, therefore, the lost profits the Medawars claim are indeed special damages, and, as such, are explicitly excluded under the plain language of the Contract.

The Medawars further contend that the clause is an unconscionable attempt to avoid *all* liability. However, there is no evidence that the clause, based on its plain language, shields Otis Elevator from all liability. Indeed, as the Medawars identified in their Opposition, the clause does not apply to general contract damages. Opp'n at 18–20. If the Medawars are the real party in interest and have suffered general contract damages as a result of a breach of the contract, Otis Elevator will be liable.

Lastly, the Medawars contend that limitation of liability clauses, such as the clause contemplated here, are only appropriate in limited circumstances "where one party is offering a service for free to the public or where the beneficiary of the clause is involved in a high-risk, low-compensation service." Opp'n at 21 (quoting *Lewis v. YouTube, LLC*, 197 Cal. Rptr. 3d 219, 224 (Ct. App. 2015)). In support of this contention, the Medawars cite *Lewis*, which found that a limitation of liability clause in the Terms of Service for a free video posting and streaming website was valid. *Lewis*, 197 Cal. Rptr. 3d at 224–25. However, the Medawars' reading of *Lewis* is inaccurate. Although *Lewis* found that limitation of liability clauses were appropriate in such

---

[14] In fact, the SAC contains no allegations suggesting that the Medawars communicated to Otis Elevator JCM's intent to rent out units in the building where the elevator was to be constructed at the time the parties entered into the Contract. *See generally* SAC. Although the SAC alleges that Medawar informed an Otis Elevator employee that the Medawars "were losing $3,000 per day due to Otis's failure to complete the job," SAC ¶ 19, this communication took place on February 12, 2020—years after the parties initially entered into the Contract—and therefore well after the time period that might make this communication justify lost profits even as special damages.

circumstances, California has not limited such clauses only to these circumstances. In fact, in *Food Safety Net Services v. Eco Safe Systems USA, Inc.*, cited by the *Lewis* court, the California Court of Appeal concluded that a limitation of liability clause "effectively limit[ed]" the defendant's liability, even though the defendant was not offering a free public service or involved in a high-risk, low-compensation service. *Food Safety Net*, 147 Cal. Rptr. 3d 634, 641–45 (Ct. App. 2012). As a result, the Court finds that the "loss, damages or delay" clause limits the Medawars' recovery and bars any relief sought for consequential, special, and indirect damages. The Court therefore GRANTS the Motion for Summary Judgment as to the Medawars' prayer for consequential, indirect, and special damages.

### III.  Conclusion

In light of the foregoing, the Court hereby ORDERS as follows:

1. The Request for Judicial Notice is GRANTED;
2. The Court's Findings of Fact are ESTABLISHED for trial; and
3. The Motion for Summary Judgment or, in the Alternative, Motion for Partial Summary Judgment, is GRANTED IN PART.

IT IS SO ORDERED.

Dated: July 12, 2022

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge